Opinion filed May 23, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00123-CR

_____

**DANIEL GARCIA HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR37118**

### M E M O R A N D U M   O P I N I O N

The jury convicted Daniel Garcia Hernandez of two counts of aggravated assault with a deadly weapon and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of two years on each count. The trial court sentenced him accordingly and ordered

his sentences to run concurrently. Because we find that defense counsel's assistance was ineffective, we reverse and remand.

Hernandez presents three issues for review. In his first issue, Hernandez alleges that he was denied effective assistance of counsel. In his second issue, he contends that the trial court erred when it admitted evidence of prior convictions over his Rule 403 objection. *See* TEX. R. EVID. 403. Hernandez argues in his third issue that the evidence was legally insufficient.

We will first review whether the evidence was sufficient. We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The evidence produced during the State's case-in-chief showed that Hernandez met his ex-wife, Marisela Garcia, at a Shell gas station in Midland to drop off their two children after spending time with them during his Thursday night visitation period. Marisela's current husband, Marco A. Garcia, who was her boyfriend at the time of the incident, accompanied her to pick up the children. Michael Wayne Gillis, an employee of the gas station, was outside smoking a cigarette and observed the exchange.

Marisela and Marco arrived at the gas station in a pickup, and Hernandez arrived in a white Volvo. Both parties parked on the north side of the gas pumps. Hernandez's son, C.H., and his daughter, G.H., got out of his Volvo and walked toward the pickup. Marco got out of the pickup and walked over to the Volvo to

see why Hernandez was yelling. C.H. got in the pickup, and G.H. stood outside the pickup next to Marco. Hernandez remained in his Volvo; the windows were up. Hernandez and Marco had a heated conversation and began yelling at each other through the window. Hernandez drove toward one of the gas station exits at a high rate of speed. Gillis testified that it sounded like the Volvo pulled away going "full throttle."

Instead of exiting, Hernandez made a U-turn and came back around toward the pickup. He quickly accelerated and drove toward Marco and G.H. Marco pushed G.H. back and jumped back toward the pickup. Hernandez veered away, but not until Marco and G.H. were already out of harm's way. The mirror on Hernandez's vehicle was in front of Marco's chest when Hernandez drove past. Marco testified that he felt threatened for his life and for G.H.'s life when Hernandez was driving toward them at a high rate of speed. There was no doubt in his mind that he and G.H. would have been hit if they had not moved out of the way. Gillis testified that he could not see exactly how close Hernandez came to hitting Marco and G.H. but that, if they had not jumped back, they probably could have been hit. Marisela also testified that, if Marco and G.H. had not moved, Hernandez would have hit them. On cross-examination, she testified that she did not recall telling the police that, when Hernandez got close to hitting Marco, he "veered off" and drove out of the parking lot.

After Hernandez drove by Marco and G.H., he made another U-turn, drove past the south side of the pumps, and exited the parking lot. Gillis called the police because he "didn't feel right about a little kid's life being put that close to danger."

Marco, Gillis, and Marisela testified that Marco did not try to hit Hernandez with his fists, try to punch the Volvo's window, or try to do anything else aggressive toward Hernandez. They further testified that there was nothing

3

blocking Hernandez from exiting the gas station and that he could have exited without a problem if he had wanted to.

During his case-in-chief, Hernandez testified that he arrived at the Shell station to drop off his children and was telling them goodbye when Marco started banging on his window with a closed fist. Marco was yelling at him to "[g]et the f--k out." Hernandez testified that Marco constantly antagonized him and tried to get him to fight by making gestures toward him and calling him names. He drove off because he was afraid of what Marco was going to do. Hernandez never got out of his car, never rolled down his window, and never said anything to Marco.

Hernandez tried to exit the parking lot but was not able to because of traffic. He drove back around toward the other exit, and Marco lunged at him. Because he could not get out of that exit either, he drove back toward the first exit and finally was able to exit the parking lot. Hernandez testified that he did not recall driving at a high rate of speed and that he did not have any intention to strike anyone or put anyone in fear of bodily injury. He did not see his daughter standing outside the pickup and would never place her in danger; he would do anything to protect her. His intention was to get away from the parking lot as soon as he could because of Marco. Hernandez agreed that he may have consciously disregarded the possibility that his vehicle could have hit someone, and he stipulated that a motor vehicle could be a deadly weapon.

C.H. testified that he had to get out of the car very quickly because Marco was there and because he knew that Marco was going to try to start something. After C.H. got out of the car, Marco went over to the car and started hitting Hernandez's window and cursing. Hernandez drove off and tried to exit, but was unable to because of a long line of traffic. C.H. said that his dad turned around and exited at the other side of the parking lot. C.H. said that G.H. was not outside the pickup but that she was in it with him.

4

The defense called several witnesses who testified that they had observed Hernandez's relationship with his children and that he loved his children and had a close relationship with them. Jeanette Lynn Sanchez, an ex-girlfriend of Hernandez, also testified on behalf of the defense. She testified about multiple times that she had observed Marco act aggressively toward Hernandez. Marco called him names, such as "faggot"; laughed at him; threw his hands up at him; and made gestures toward him. On rebuttal, Marisela testified that Hernandez also called Marco names and that both men started fights with each other.

Although several witnesses testified on behalf of Hernandez and although Hernandez testified that he had no intention to strike Marco and was not aware that his daughter was standing outside the pickup, the jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Hernandez committed the offense of aggravated assault with a deadly weapon against Marco and G.H. Hernandez's third issue on appeal is overruled.

In his first issue, Hernandez alleges that he was denied effective assistance of counsel. Specifically, he asserts that his trial counsel opened the door to allow the State to introduce evidence of his prior convictions of sexual assault and sexual assault of a child when his counsel asked Sanchez, Hernandez's ex-girlfriend, whether Hernandez was a violent person and she responded that he was not. Hernandez also contends that his trial counsel was ineffective when he (1) failed to object when the prosecutor asked Sanchez about the time Hernandez assaulted her, (2) failed to object to Hernandez's community supervision officers' testimony, and

5

(3) failed to object when the prosecutor asked Hernandez about doing bad things in front of children.

In order to determine whether Hernandez's trial counsel rendered ineffective assistance at trial, we must first determine whether he has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694; *Hernandez*, 726 S.W.2d at 55. We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Hernandez must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Hernandez contends that the first instance of ineffective assistance of counsel occurred when his counsel asked Sanchez, Hernandez's ex-girlfriend, whether Hernandez was a violent person and she responded that he was not. Defense counsel opened the door for the State to introduce evidence of Hernandez's character for violence by eliciting testimony from Sanchez that Hernandez was not a violent person. *See* TEX. R. EVID. 405(a) (when evidence of a person's character is offered in the form of opinion testimony, the opposing party may ask the witness whether they know about specific instances of conduct that are

6

relevant to the character trait). Thus, on cross-examination, the State was permitted to ask Sanchez whether she knew that Hernandez had pleaded guilty to two prior sexual assaults even though under TEX. R. EVID. 609(c)(2) the convictions were otherwise inadmissible. Rule 609(c)(2) prohibits the admission of prior convictions in which the defendant successfully completed probation.

The parties specifically addressed this issue during a hearing on Hernandez's pretrial motion regarding the admissibility of his prior convictions for impeachment purposes. During the pretrial hearing, the State agreed that Hernandez's prior convictions could not come in under Rule 609(c)(2) as impeachment evidence because Hernandez successfully completed probation. However, the State argued that the prior convictions could become admissible if Hernandez opened the door by presenting evidence that he was a good person or a law-abiding citizen. Defense counsel acknowledged that this could be possible, and the trial court instructed the State to approach the bench if it believed Hernandez opened the door.

When the parties approached the bench after defense counsel opened the door, defense counsel immediately requested that he be allowed to withdraw the question so that the State could not present evidence of Appellant's prior convictions. The indication is that defense counsel realized that he had opened the door to the admission of the otherwise inadmissible evidence. The trial court did not permit counsel to withdraw the question and it permitted the State to ask Sanchez whether she knew Hernandez had pleaded guilty to two prior sexual assaults.

In *Robertson v. State*, defense counsel, as part of his trial strategy to convince the jury that the defendant was not a liar, asked the defendant during direct examination about the defendant's two prior convictions. *Robertson v. State*, 187 S.W.3d 475, 477, 480–81 (Tex. Crim. App. 2006) (*Robertson I*).

7

During a hearing on the motion for new trial, defense counsel testified that he now knew that the convictions were not admissible for impeachment purposes because the cases were pending on appeal. *Id.* at 481 (inadmissible under TEX. R. EVID. 609). The court stated:

> [I]n cases like this where appellant's self-defense claim rested almost entirely on his credibility, the weight of authority supports a holding that appellant's trial lawyer performed deficiently under the first prong of *Strickland* by allowing the jury to hear prejudicial and clearly inadmissible evidence because this evidence could serve no strategic value including demonstrating that appellant is not a liar.

*Id.* at 484. The court remanded the case to the court of appeals to address the second prong of *Strickland*. *Id.* at 486. On remand, the court of appeals found that the defense was prejudiced by counsel's deficient performance because the deficient performance undermined the defendant's credibility, which was critical to his claim of self-defense. *Robertson v. State*, 214 S.W.3d 665, 668 (Tex. App.–Waco 2007, no pet.).

Similarly, in *Ex parte Menchaca*, the Court of Criminal Appeals held that defense counsel's assistance was ineffective when counsel failed to object to inadmissible prior convictions because such a decision could not be considered sound trial strategy and because the deficient performance undermined the defendant's credibility, which was at the very heart of his defense. *Ex parte Menchaca*, 854 S.W.2d 128, 133 (Tex. Crim. App. 1993). Relying on *Robertson I* and *Ex parte Menchaca*, we recently held that defense counsel's performance fell below an objective standard of reasonableness when defense counsel, during the defendant's direct examination, elicited evidence of two prior convictions that were inadmissible under Rule 609. *Vasquez v. State*, No. 11-10-00334-CR, 2012 WL 4826966, at *5–6 (Tex. App.—Eastland Oct. 11, 2012, pet. ref'd) (mem. op., not designated for publication). We further held that the defendant met the second

prong of *Strickland* because the evidence of the prior convictions, the prosecutor's cross-examination of the defendant regarding his prior convictions, and the prosecutor's closing argument implied that the defendant was not to be believed. *Id.* at *6.

Here, defense counsel opened the door to Hernandez's prior convictions and allowed prejudicial and otherwise inadmissible evidence to be presented before the jury. We are aware that we must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. We are also aware that Hernandez must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong*, 25 S.W.3d at 712. We cannot see how the challenged action in this case could be considered sound trial strategy. Because Hernandez has shown that his counsel's representation fell below an objective standard of reasonableness, he has met the first prong of *Strickland*.

We must next determine whether there is a reasonable probability—a probability sufficient to undermine the outcome of the trial—that the result of the proceeding would have been different but for defense counsel's deficient performance. *Strickland*, 466 U.S. at 687, 694; *Hernandez*, 726 S.W.2d at 55–57. We consider the totality of the evidence in determining whether counsel's performance prejudiced the defense. *Strickland*, 466 U.S. at 695–96.

Here, defense counsel opened the door for the State to cross-examine Sanchez on whether she knew of Hernandez's prior convictions for sexual assault. Defense counsel then called Kimberly Rogers, who works for the Adult Probation Department, to testify that Hernandez had successfully completed probation on both of his prior convictions. However, defense counsel also elicited testimony from Rogers that Hernandez did not follow all of the rules of his probation. On cross-examination, the State was able to elicit testimony that, even though

9

Hernandez completed his probation, Rogers had concerns regarding his rehabilitation and was specifically concerned for the safety of his ex-wife. When Hernandez testified, the State questioned him regarding the two prior convictions and specifically asked him how he could claim that he would never do anything bad in front of children when he had been convicted of sexually assaulting a child. During closing arguments, defense counsel emphasized that the prior convictions occurred many years ago, that the defendant had completed probation on both charges, that he had not re-offended, and that he was not restricted from seeing his children in any way because of his past. The prosecutor emphasized that there was not a more violent crime than sexual assault, besides murder, that could be committed against a child. He also argued that the two prior convictions showed Hernandez's violent nature, stating: "That's the kind of person this man is."

Hernandez contends that the result of the proceeding would have been different because, if counsel had not opened the door, Hernandez could have testified without the jury knowing of his prior sexual assault convictions. He claims that the credibility of the parties was vital in this case and that, because of counsel's errors, the jury was not going to believe him. Hernandez's defense was that he was trying to get away from Marco and that he had no intention to hurt anyone. Thus, the credibility of his testimony was a key component of his defense strategy. Although the trial court gave the jury a limiting instruction as to how it could consider the prior convictions, the limiting instruction specifically allowed the jury to consider Hernandez's prior convictions for the sole purpose of determining Hernandez's character for violence.[1] We find that Hernandez has shown that there is a reasonable probability that the result of the trial might have been different but for his counsel's deficient performance. Hernandez has met the

[1] In the jury charge, the trial court instructed the jury that it could only consider the prior convictions to aid the jury in passing upon the credibility of Sanchez.

10

second prong of *Strickland*, as to the first instance of ineffective assistance of counsel that he raised. Without reaching the other instances of alleged ineffective assistance of counsel, we sustain his first issue.

Because we have sustained Hernandez's first issue, we need not address Hernandez's second issue.

We reverse the judgment of the trial court, and we remand the cause for further proceedings.

JIM R. WRIGHT
CHIEF JUSTICE

May 23, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.